Vera L. JENNINGS, Appellant,

v.

AMERICAN POSTAL WORKERS UNION, Appellee.

No. 81–1126.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1982.

Decided March 19, 1982.

Rehearing Denied April 28, 1982.

Vera L. Jennings, pro se and Dennis L. Callahan, St. Louis, Mo., for appellant.

Bruce S. Feldacker, P. C., by Leslye Guttenberg, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Vera L. Jennings appeals the dismissal of her complaint against the American Postal Workers Union, Local 8 (Union),[1] by the District Court for want of jurisdiction and failure to state a cause of action. She also appeals the court's denial of her request for appointment of counsel. In her complaint, Ms. Jennings alleged that the Union discriminated against her on the basis of race and sex by not adequately representing her in her grievance against her former employer, the United States Postal Service. The District Court interpreted Ms. Jennings's *pro se* complaint as attempting to state causes of action under (1) Title VII of the Civil Rights Act of 1964, as amended, 42

---

1. The official name of the Union is the St. Louis Gateway Area Local, American Postal Workers Union, AFL-CIO.

U.S.C. §§ 2000e *et seq.*, (2) 42 U.S.C. § 1981, and (3) 29 U.S.C. § 185. Because we conclude that jurisdiction under Title VII depends on a question of fact not properly disposed of on the pleadings, and that the plaintiff does state a cause of action under the latter two statutes, we reverse and remand to the District Court for further proceedings.

Ms. Jennings was employed by the Postal Service from March 28, 1970, until her discharge on December 15, 1975, and was a member of the Union. On November 14, 1975, she received a Notice of Removal from the Postal Service with an effective date of December 15, 1975. The reasons given for her termination were three incidents of insubordination and one incident of making a false statement about a supervisor. A second Notice of Removal, effective December 21, 1975, was issued to Ms. Jennings on November 21, 1975, charging her with another incident of insubordination. On December 5, 1975, she received a third termination notice, effective January 5, 1976, dismissing her for threatening a fellow employee.

The Union, on behalf of Ms. Jennings, subsequently filed four separate grievances protesting the notices of removal. The first grievance was advanced by the Union through several steps of the appeals procedure up to, but not including, arbitration. A timely request for arbitration was made to the National President of the Union, but was denied after consideration of the evidence. Although it had the option of doing so, the local Union chose not to arbitrate the grievance at its own expense. Because this grievance did not go to arbitration, Ms. Jennings's first Notice of Removal became effective, and she was discharged. The local Union later withdrew the other, still-pending, grievances, determining that they had been mooted by Ms. Jennings's termination.

2. In affidavits, Ms. Jennings claims that she approached the EEOC with her complaint as early as February, 1976.

3. Two letters from the EEOC submitted with Ms. Jennings's affidavits reveal that, on July 18, 1978, the EEOC told her that the Civil

Ms. Jennings claims that she approached the Equal Employment Opportunity Commission on several occasions after her discharge,[2] seeking to file a complaint against the Union. She was informed by the EEOC that it lacked jurisdiction over her complaint.[3] Ms. Jennings subsequently brought an action in the District Court against the Union on December 17, 1979, alleging sex and race discrimination. On February 25, 1980, she voluntarily dismissed this suit after Judge Nangle denied her request for appointment of counsel. Ms. Jennings successfully filed with the EEOC on September 10, 1980, a charge of discrimination against the Union. The EEOC issued a Notice of Right to Sue on October 23, 1980, stating that it had no jurisdiction over the complaint. On November 5, 1980, plaintiff filed the present action.

After again denying her request for appointment of counsel, the District Court dismissed Ms. Jennings's complaint on January 19, 1981, holding (1) the court lacked subject-matter jurisdiction over the Title VII claim because Ms. Jennings had failed to file a charge with the EEOC within the applicable time limit, and that (2) her *pro se* complaint failed to state a cause of action under either 42 U.S.C. § 1981 or 29 U.S.C. § 185.

## I. *Title VII*

Under § 706 of Title VII, 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. The requirement, however, "is not a jurisdictional prerequisite to suit in federal court" but is like a statute of limitations—"subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,* —— U.S. ——, ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). The District Court found that Ms.

Service Commission had jurisdiction over her complaint, and that, on August 28, 1978, the EEOC further informed her that its lack of jurisdiction was based on a determination that the Union was not covered by Title VII.

Jennings's complaint was filed with the EEOC over four years after her dismissal, which the court viewed as constituting the alleged unlawful employment practice. The court then concluded that the untimely filing deprived it of the power to hear Ms. Jennings's claim. We cannot agree. There are issues of fact that remain to be resolved by the District Court before it can be determined whether Ms. Jennings's complaint was untimely.

In the first place, we think Ms. Jennings's termination, as such, was not the unlawful employment practice complained of. She was not suing the United States Postal Service nor complaining of her dismissal. Plaintiff filed her action against the Union, alleging that it had discriminated against her because of her race and sex in failing to represent her adequately. This claim sufficiently alleges a violation of § 703(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(c), which requires the Union to "represent and protect the best interests of minority employees." *United States v. N. L. Industries, Inc.,* 479 F.2d 354, 379 (8th Cir. 1973). The District Court must, therefore, determine what specific activity of the Union constituted the unlawful employment practice and, from that, when the 180-day limitation period commenced.

Another issue of fact significant to the timeliness of Ms. Jennings's complaint is the date on which she first filed her charge with the EEOC. The record shows that the EEOC accepted plaintiff's complaint against the Union on September 10, 1980, which the District Court determined to be the official filing date. The record also shows, however, that Ms. Jennings sought to file a charge with the EEOC on July 18,

1978. In addition, she alleges that she attempted to file a complaint with the EEOC against the Union on several, earlier occasions, beginning in February, 1976, but was told by the agency that it lacked jurisdiction over a claim by a federal employee against a union representing federal employees. If the EEOC actually declined to process Ms. Jennings's charge based on that reason, as it apparently did in 1978,[4] it was proceeding under an erroneous interpretation of the law.

■ It is clear that Title VII provides a cause of action against labor organizations for unlawful employment practices. See 42 U.S.C. §§ 2000e–2(c)[5] and 2000e–5. The fact that the defendant in this case is a labor organization representing federal employees is not controlling.[6] The EEOC had jurisdiction over the complaint under § 703(c) of Title VII, 42 U.S.C. § 2000e–2(c), and should have processed Ms. Jennings's charge when she first contacted the agency. The District Court must still determine, however, whether Ms. Jennings actually did approach the EEOC in an attempt to file her complaint on a date that falls within the 180-day limitation period. If she did, her charge should be deemed timely. An uncounseled plaintiff should not be penalized for the EEOC's mistake of law.

## II. *Section 1981*

■ Relying on *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the District Court rejected the claim under 42 U.S.C. § 1981 on the basis that Title VII is the exclusive remedy for discrimination in

4. See note 3 *supra.*

5. Section 2000e–2(c), in part, states:
   (c) It shall be an unlawful employment practice for a labor organization—
   (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin . . . .

6. In *Newbold v. United States Postal Service,* 614 F.2d 46 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980), the court held that the American Postal

Workers Union could not be sued under § 717(c) of Title VII, 42 U.S.C. § 2000e–16(c), which provides for suit against a *federal department or agency.* The court, however, made no mention of the applicability of § 703(c), 42 U.S.C. § 2000e–2(c), which concerns labor organizations. Section 717(c) is the exclusive remedy against federal agencies as employers for racial discrimination, but it does not limit the rights of employees against unions representing federal employees.

federal employment. The court's reliance on *Brown* is misplaced, however, since this action is against a union and not a federal department or agency. The Supreme Court has held that the existence of U.S.C. § 2000e–2, which includes labor organizations, does not bar an action under § 1981. *Johnson v. Railway Express Agency*, 421 U.S. 454, 457–60, 95 S.Ct. 1716, 1718–1720, 44 L.Ed.2d 295 (1975). *Newbold v. United States Postal Service, supra*, cited by the District Court, may in fact hold, at least by implication, that no § 1981 action lies against unions representing federal employees, but we cannot agree with such a conclusion. No union was a defendant in *Brown*, and § 717 in terms speaks only of actions against federal departments, agencies, or units. Apparently the *pro se* plaintiff in *Newbold* (who sued the Postal Service as well as the union) relied exclusively on § 717. The Fifth Circuit's brief per curiam does not mention the possible applicability of § 703(c) to the union defendant. We are not sure that the Fifth Circuit, if squarely presented with a § 703(c) theory, would adhere to its apparent view that a federal-employee union cannot be liable under § 1981. In any event, we hold that such a union, like a labor organization representing nonfederal employees, is subject to 42 U.S.C. § 1981 as well as to 42 U.S.C. § 2000e–2(c). We also hold that plaintiff's complaint, though somewhat conclusory and far from artful, clearly charges that the union failed to process her grievance because she is black. That is enough to survive a motion to dismiss for failure to state a claim. The § 1981 aspect of the case concerns, of course, only the charge of racial discrimination, not the claim of gender-based discrimination. We have not considered whether the § 1981 claim is barred by the applicable Missouri state statute of limitations. Defendant is free to raise that question on remand if it thinks it might have merit.

### III.   *29 U.S.C. § 185*

Ms. Jennings alleged that the mishandling of her grievances denied her the opportunity to contest the charges against her which resulted in her termination, and that this mishandling was racially and sexually motivated. Under *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), allegations that the union's action was arbitrary, discriminatory, and in bad faith, state a claim of breach of the statutory duty of fair representation. A union is required to represent minority union members "without hostile discrimination, fairly, impartially, and in good faith." *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 204, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). For these reasons, we conclude that Ms. Jennings also stated a cause of action against the union under 29 U.S.C. § 185.

### IV.   *Conclusion*

The judgment is reversed, and the cause is remanded to the District Court for further proceedings consistent with this opinion. It is not necessary to deal with the District Court's denial of the appointment of counsel as such. We have appointed counsel for plaintiff on this appeal, and the same lawyer, we suggest, may continue to represent her on remand. We are indebted to appointed counsel for his diligent service to his client and to the administration of justice.

It is so ordered.